**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| RICK BARNES, )<br>            Plaintiff, )<br>   v. )<br> )<br>W. PATRICK HARTSHORN, in his )<br>capacity as Sheriff of Vermilion County, )<br>Illinois; VERMILION COUNTY )<br>SHERIFF'S DEPARTMENT; )<br>COUNTY OF VERMILION ILLINOIS, )<br>a body corporate and public; )<br> )<br>            Defendants. ) | Case No. 09-2299 |

# REPORT AND RECOMMENDATION

In December 2009, Plaintiff Rick Barnes filed a Complaint (#1) against Defendants W. Patrick Hartshorn, the Vermilion County Sheriff's Department, and the County of Vermilion, alleging violations of the Age Discrimination in Employment Act (29 U.S.C. § 626(c)). This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claim is based on a federal statute.

In March 2010, Defendants filed a Motion To Stay and Compel Arbitration (#23). Plaintiff subsequently filed a Memorandum in Opposition to the Defendants' Motion To Stay and Compel Arbitration (#26). After reviewing the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants' Motion To Stay and Compel Arbitration **(#23)** be **DENIED.**

## I.  Background

The following background is taken from the complaint. Plaintiff has worked continuously as a deputy sheriff for the Vermilion County Sheriff's Department since December 4, 1985. He is a member of the Fraternal Order of Police (hereinafter "FOP") and is

covered under the Collective Bargaining Agreement (hereinafter "CBA") (#24-1) between the FOP and Vermilion County.  The CBA is effective from December 1, 2006, to November 30, 2010.

Plaintiff applied for a promotion to the rank of sergeant in 2007, and was denied this promotion on October 2, 2007.  Plaintiff claims that Defendants did not promote because of his age, thus violating the Age Discrimination in Employment Act (hereinafter "ADEA").  Plaintiff attempted to bring a grievance through the FOP, but this request was denied.  As a result, Plaintiff filed this claim on December 10, 2009.

Plaintiff's complaint alleges three counts of age discrimination against Defendant Hartshorn (Count I), Defendant Vermilion County (Count II), and Defendant Vermilion County Sheriff's Department (Count III).

## II.  Legal Standard

The Federal Arbitration Act (9 U.S.C. §§ 1-15) ("hereinafter FAA") mandates enforcing arbitration agreements if such agreements are (1) written, (2) part of a contract or transaction involving interstate commerce, and (3) valid under general principles of contract law.  9 U.S.C. § 2.  The FAA embodies a federal policy of favoring arbitration, with any doubts with respect to arbitrability resolved in favor of arbitration.  *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005).  However, a party cannot be compelled to arbitrate if that party did not originally agree to submit the dispute to arbitration.  *Id.*; *see also Grundstad v. Ritt*, 106 F.3d 201, 204 (7th Cir. 1997).

Whether two parties have agreed to arbitrate a dispute is an issue for the courts to decide. *AT&T Techs., Inc. v. Communc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  To compel arbitration, a party must show that (1) there is an enforceable arbitration agreement; (2) the dispute is within the scope of the agreement; and (3) the opposing party has refused to proceed to arbitration.  *See Zurich Am. Ins. Co. v. Watts In., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).  The

party opposing arbitration bears the burden of establishing that the arbitration clause should not be enforced.  *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987).

### III.  Discussion

Defendants argue that Plaintiff has a legally enforceable contractual obligation under the CBA to submit his age discrimination claim to binding arbitration instead of litigating it in a court of law.  Specifically, Defendants contend that (1) the CBA contains an enforceable agreement to arbitrate; (2) Plaintiff's claim is within the scope of the agreement; and (3) Defendants have not waived their right to enforce the arbitration provision of the agreement.  Accordingly, Defendants contend that the Court should compel Plaintiff to arbitrate his claim.

Two articles of the CBA are at issue.  First, Article 8 prohibits discrimination and states as follows:

> Neither the Employer nor the Labor Council shall discriminate against any employee on account of race, creed, color, religion, age, national origin, ancestry, sex, marital status, nor because of participation or non-participation in lawful Labor' Council activity.

(CBA, #24-1, p. 15.)  Article 9, titled "Grievance and Arbitration Procedure," defines a grievance as follows:

> The term "grievance," for the purpose of this Agreement, means any difference between the Employer and the Employees or between the Labor Council and the Employer concerning an alleged violation by the Employer of the express provisions of this Agreement.

(CBA, #24-1, p. 15.)  Article 9 then sets forth the procedure for handling grievances.  (CBA, #24-1, pp. 15-16.)  This requires the employee to first discuss the matter with his immediate supervisor, then submit a written description of the grievance to an official designated by the employer who will timely provide a written answer to the grievance.  Article 9 then states:

> If said Answer is not acceptable to the Labor Council, the grievance will be submitted to arbitration if either party submits written notice of intent to arbitrate the grievance by certified mail within fifteen (15) calendar days after the date of the Employer's Answer.
> . . . .

> . . . [T]he decision of the Arbitrator on the grievance submitted shall be final and binding.

(CBA, #24-1, p. 16.)

### A. Enforceability

Defendants first argue that Plaintiff is subject to an enforceable arbitration agreement. In this case, the FOP, acting on behalf of all sworn deputies of Vermilion County below the rank of sergeant, entered into the CBA with Vermilion County. (CBA, #24-1, p. 8.) At relevant times, Plaintiff was a deputy; therefore, the provisions of the CBA apply to him. The CBA contains provisions requiring arbitration of employee disputes. Unions are allowed to agree to arbitration provisions in a CBA. *14 Penn Plaza LLC v. Pyett*, --- U.S. ---, 129 S.Ct. 1456, 1465 (2009). Therefore, Plaintiff is subject to the arbitration provisions in the CBA. Plaintiff does not dispute this.

### B. Scope of the Arbitration Agreement

Defendants next argue that Plaintiff's statutory claim of age discrimination is within the scope of the arbitration provisions of the CBA.

The United States Supreme Court has held that statutorily-protected age-discrimination claims that are justiciable under the ADEA may fall within the scope of the arbitration provisions of a CBA. *Pyett,* 129 S.Ct. at 1465. For a plaintiff's claim to be within the scope of the arbitration provisions of the CBA, the CBA must "explicitly state" that the employee agrees to arbitrate statutory antidiscrimination claims. *Id.* Similarly, an individual does not waive the right to bring a discrimination claim in federal court unless the agreement "explicitly states" such a waiver. *Id.* "[T]he waiver must be clear and unmistakable" because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit . . . waiver." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) (stating that the "explicitly stated" standard applies to a union-negotiated waiver of an employee's statutory right to a judicial forum for employment discrimination claims). Thus, in *Pyett,* the Court stated that, " 'having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention

to preclude a waiver of judicial remedies for the statutory rights at issue.' " *Pyett*, 129 S.Ct. at 1465 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).  The Court acknowledged that "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." *Id.*

*Pyett* involved a CBA that explicitly stated that a claim regarding a statutorily-protected right must be arbitrated.  The CBA stated, in pertinent part, as follows:

> There shall be no discrimination against any present or future employee by reason of . . . age . . . including, but not limited to, claims made pursuant to . . . the Age Discrimination in Employment Act . . . or any other similar laws, rules or regulations.  All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id.* at 1461.  The Supreme Court held that this section of the CBA also explicitly stated the waiver of the statutorily-protected right to litigate, because it "clearly and unmistakably requires respondents to arbitrate the . . . claims at issue." *Id.* at 1466.  Thus, the Court held that the plaintiff's claim was within the scope of the arbitration agreement and he had waived his right to file suit.

In support of their argument that Plaintiff's age discrimination claim is within the scope of the arbitration provisions of the CBA and he is required to arbitrate his claim, Defendants rely on *Oblix v. Winiecki*, 374 F.3d 488 (7th Cir. 2004), in which the court held that an individual who entered into an arbitration agreement with her employer was required to arbitrate claims related to compensation and discrimination.  The agreement stated, in pertinent part, as follows:

> [A]ny dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be resolved exclusively by binding arbitration . . . .

*Id.* at 490.  Despite the holding in this case, the language in *Oblix* appears to be too general to satisfy the "explicit" standard discussed in *Pyett*.  *Oblix* involves an arbitration agreement between an individual employee and her employer, while *Wright* and *Pyett* address arbitration

5

agreements between an employer and a union who is acting on behalf of employees. *Compare Oblix,* 374 F.3d at 490-92, *with Wright,* 525 U.S. at 80-81. However, the *Pyett* decision recognizes no distinction between those two situations, stating as follows: "Nothing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative. This Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated.'" *Pyett*, 129 S. Ct. at 1465. The *Pyett* decision clearly undermines the court's reasoning in *Oblix*. Accordingly, this Court will analyze the contractual language in this case based on the requirement that an agreement must "explicitly state" the agreement to arbitrate an age discrimination claim and the waiver of a right to pursue such a claim in court.

*Wright* is an example of a case in which the Supreme Court Case held that a CBA did not explicitly state that statutorily-protected rights were within the scope of the agreement. The CBA in *Wright* stated, in pertinent part, as follows:

> [T]his Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment . . . . Any dispute concerning or arising out of the terms and/or conditions of this Agreement, or dispute involving the interpretation or application of this Agreement, or dispute arising out of any rule adopted for its implementation, shall be referred to the Seniority Board.

*Wright*, 525 U.S. at 73. The Supreme Court found that (1) this language in the CBA was "very general"; and (2) the remainder of the CBA contained "no explicit incorporation of statutory antidiscrimination requirements." *Id.* at 80. As a result, the Court held that the plaintiff's discrimination claim was not within the scope of the arbitration agreement, and the plaintiff had not waived the right to litigate his claim.

In *Lawrence v. Jewel Food Stores, Inc.,* the Northern District court considered this issue in the context of a CBA which provided as follows:

> Neither the employer nor the Union shall discriminate against any employee or prospective employee because of race, creed, color, sex, age, national origin, handicap, or union membership. Any alleged violation of this Article shall be processed in accordance with the Grievance and Arbitration procedures contained in this Agreement.

*Lawrence v. Jewel Food Stores, Inc.*, No. 04 C 2979, 2006 WL 1005068, *1-2 (N.D. Ill. Apr. 14, 2006) (unreported).  Consistent with *Wright,* the court found that this language (1) did not contain "an explicit incorporation of statutory anti-discrimination requirements," and (2) did not constitute a "clear and unmistakable waiver."  *Id.* at *12.  Thus, the court found that the agreement did not explicitly incorporate a Title VII claim (*id.*) and did not "through clear and unmistakable language waive [an employee's] right to pursue a Title VII claim in federal court" (*Id.* at *17).

After reviewing relevant case law, the Court concludes that the CBA in this case is not explicit enough to satisfy the *Pyett* standard.  The language in Article 8 is similar to that in *Lawrence* and *Wright*, because it prohibits Plaintiff's employer and the Labor Council from discriminating against Plaintiff on a number of grounds.  However, as in *Lawrence*, this article does not refer specifically to the ADEA, or even generally to "federal statutory rights."  *See, e.g., Manuele v. City of Springfield, Ill.*, No. 08-3026, 2010 WL 2348608, *7 (C.D. Ill. June 10, 2010) (holding that the contract language was not explicit because "the provision in this case does not mention the FLSA specifically, nor does it mention federal law generally").  Nor does it explicitly require that employees address statutory claims through the grievance process.  The article does refer to the Americans with Disabilities Act, but that does not help Defendants.  Article 9 is similar to the general clause in *Wright* that requires all grievances to undergo arbitration.  As a result, the Court concludes that Plaintiff's ADEA claim is not within the scope of the CBA arbitration provisions and the CBA does not explicitly waive Plaintiff's right to file suit.  Accordingly, the Court recommends denying Defendants' motion.

### C.  Waiver

Defendants also argue that they have not waived their right to enforce the arbitration provision of the agreement.  Because the Court has found that Plaintiff's ADEA claim is not within the scope of the CBA arbitration provisions, the Court need not consider this argument.

### IV.  Summary

For the reasons stated above, the Court recommends that Defendants' Motion To Stay and Compel Arbitration **(#23)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of the Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video View, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 15th day of July, 2010.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE